UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALOYSIUS EMMANUEL ASBERRY,<br><br>Petitioner,<br><br>v.<br><br>ELIOT SPEARMAN,<br><br>Respondent.[1] | Case No. 1:17-cv-00150-LJO-JDP (HC)<br><br>FINDINGS AND RECOMMENDATIONS THAT COURT DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>ECF No. 1<br><br>OBJECTIONS DUE IN 14 DAYS |

Petitioner Aloysius Emmanuel Asberry, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges several parts of the jury instructions given at his trial. According to petitioner, those jury instructions inappropriately allowed the jury to convict him of aiding and abetting second-degree murder without evidence that he intended to kill anybody.[2] Petitioner's habeas claims are based on a mistaken view of California law; aiding and abetting second-degree murder does not require intent to kill. Petitioner has not shown that his custody violates any federal law. We recommend that the court deny the petition.

---

[1] We have amended the case caption to update the spelling of petitioner's name. The docket spells petitioner's first name "Aloysious," but the documents we have received from the California state courts spell his name "Aloysius." We rely on the state court documents.

[2] Petitioner also purports to challenge his conviction of aiding and abetting premediated attempted murder, but he does not develop an argument in support of that challenge, as discussed below.

1

## I. Background

This case arises from the shooting of two victims. On September 26, 2012, two adult men and a juvenile male approached two people in an alley. According to the government, the two adult men—petitioner and his codefendant—were members of the Eastside Crips. The juvenile, who was not a member of the gang, shot the two victims in an attempt to prove himself worthy of joining the gang. While approaching the two victims in the alley, petitioner handed a pistol to the juvenile. The juvenile then attempted to cock the pistol and chamber a round, but the gun jammed. Petitioner said "Fuck it, give it to me," RT 4:513,[3] and tried to take the pistol back, but the juvenile held onto the gun and managed to cock and fire it, shooting the two victims. One victim died; the other survived to testify at trial. A jury found petitioner guilty of one count of second-degree murder and one count of premediated attempted murder. *See* Cal. Penal Code. §§ 187, 664. The state trial court sentenced petitioner to a prison term of thirty years to life plus twenty-one years. CT 2:482-87.

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal, Fifth District ("Court of Appeal"). A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> Bakersfield police responded to a report of shots fired around 1:41 a.m. on September 26, 2012. In an alley near the intersection of 34th Street and Panama Street, they found Christopher Gonzales (Christopher) face down on the ground, dead with a gunshot wound to the chest. Nearby on his knees, also bleeding from a gunshot wound, was Christopher's brother, Andrew Gonzales (Andrew). Andrew told officers there had been an argument and the shooter was a black teenage boy who was accompanied by two young black men.
>
> The district attorney filed an information charging Asberry and Peter Collins (Collins) in the shootings. As will be seen, these defendants were accused as accomplices, not direct perpetrators. The People's evidence indicated that a third perpetrator, Gary A. (Gary), was the shooter. The information charged Asberry and Collins with Christopher's murder (Pen. Code,1 § 187) in count 1 and with the attempted murder (§§ 187, 664) of Andrew in count 2. The information alleged that Asberry and Collins committed both offenses for the benefit of, at the direction of, or in association with

---

[3] All "RT" citations refer to the reporter's transcript. All "CT" citations refer to the clerk's transcript. Respondent has lodged these documents with this court. *See* ECF No. 17.

2

a criminal street gang. (§ 186.22, subd. (b).) Both offenses were alleged to be deliberate and premeditated (§ 189), and it was alleged, as to both offenses, that a principal intentionally and personally discharged a firearm, causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)). For the murder count, the information charged a gang special circumstance for both defendants. (§ 190.2, subd. (a)(22).) The information further alleged that Asberry had a prior conviction for burglary. This conviction was the basis of a second-strike enhancement allegation (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), a prior-prison-term enhancement allegation (§ 667.5, subd. (b)), and a prior-serious-felony enhancement allegation (§ 667, subd. (a)) for both counts. Asberry's prior conviction for being in possession of a stolen vehicle was the basis of another prior-prison-term enhancement allegation (§ 667.5, subd. (b)) for both counts. Finally, in count 3, the information charged Asberry and Collins with active participation in a criminal street gang. (§ 186.22, subd. (a).) The prior offenses described above were alleged for sentence-enhancement purposes in connection with count 3 as well.

At trial, Andrew testified that he lived near a Fastrip convenience store at 34th and Q Streets and went to the store with Christopher around 1:30 a.m. on September 26, 2012. Approaching the store, he saw Asberry, Collins, and Gary standing in the alley. Inside the store, he met his friend Emmanuel Body, to whom he had previously sold drugs. Body was high on methamphetamine and appeared to be scared of something. Andrew and Christopher bought beers and a cigar. Andrew shared the cigar with Body outside the store, and then Andrew and Christopher headed for Christopher's house while Body walked away in another direction.

In the alley, Andrew again saw Asberry, Collins, and Gary. As Andrew and Christopher passed by the other three men, about two or three feet away, Collins said Body was no good and Andrew and Christopher should not talk to him. Andrew answered, "I know him. He's a cool cat. He's good with me." Andrew and Christopher continued down the alley. Andrew heard footsteps following them and looked back. He saw Collins take something from the area of his hip and hand it to Asberry. Asberry handed it to Gary, who put it in his waistband. At first, Andrew thought the object could have been a cell phone. The three were about 15 feet away.

Andrew, not yet sure what the object was, became concerned and told Christopher that the two of them should move to opposite sides of the alley and let the other three pass. As he walked by, Gary mumbled something to Christopher that Andrew could not make out. Christopher replied, "We're just trying to—oh, I'm just trying to go home, but it's whatever, dog." Gary responded, "I ain't no nigga." Christopher answered, "I didn't call you a nigga. I called you dog."

After Asberry, Collins, and Gary passed by, Andrew and Christopher were expecting a fight. Gary drew a gun from his waistband and "tried to cock it back" but "it locked it up on him,

3

and he was struggling." This was when Andrew realized the object Gary put in his waistband after receiving it from Asberry was a gun. As Gary struggled to operate the gun, Asberry said to him, "Fuck it, give it to me." Asberry grabbed the gun and tried to take it from Gary. Gary pulled it away and succeeded in moving the slide back.

Gary began firing. He fired 9 to 12 times. First he shot and killed Christopher. Then he shot Andrew. Andrew was hit four times. Gary and Asberry ran away in one direction and Collins in another. Andrew believed he and his brother were shot because they had been talking to Body.

Body testified that he had known Andrew since middle school and they sometimes sold drugs to each other. Body was acquainted with Collins and had once had a physical fight with him. The fight was over Gary's mother. Collins was dating her. Body also was acquainted with her but was not dating her. According to Body, Collins appeared to be under a misapprehension about the nature of Body's relationship with her. Body admitted he had been a member of the Bloods criminal street gang for seven years but denied having told police that Collins and Asberry were members of the Eastside Crips gang. Body said he was not aware of any rivalry between the Bloods and the Eastside Crips.

Body testified that he lived near the Fastrip at 34th and Q Streets and was there around 1:30 a.m. on the night of the shooting. He saw Collins, Asberry and Gary outside, before entering the store, and briefly spoke with Asberry. Asberry asked whether Body knew Gary and whether he had any problems with Gary. Body knew Gary only by sight. He told Asberry he had no problems. Then Body went inside.

Inside the store, Body saw Andrew and Christopher. Andrew gave Body $20 worth of methamphetamine to sell. They exited, had a smoke, and walked away. Collins, Asberry, and Gary were in the alley. One of them called out to Body, but Body kept walking. Body asked Andrew and Christopher if he could give them a ride home in his car. He "felt bad vibes" and did not feel good about letting them walk home. He told them it would be in their best interest if they rode with him. Andrew and Christopher did not want a ride and headed home on foot. Body continued on toward his car and was about a block away from the store when he heard gunshots.

Sean Morphis, a police officer, testified that he interviewed Body on October 4, 2012. Body told Morphis that Gary was present when Body and Collins had their fight over Gary's mother. Body said he had been dating Gary's mother. Body also said that when he was walking into the Fastrip store on the night of the shootings, Asberry told Body that if Body wanted to fight somebody, he should fight Asberry. Body said he believed Asberry and Gary wanted to start trouble with him. He told Morphis he begged Andrew and Christopher to accept a ride from him and not to go down the alley.

4

> The prosecution presented testimony on gang issues by several police officers. One officer opined that, at the time of the shooting, Asberry and Collins were members of the Eastside Crips, Body was a Blood, and Christopher was a member of the Eastside Bakers. Andrew had been an Eastside Baker at one time, but had dropped out by the time of the shootings. The same officer opined that a hypothetical crime based on the facts of the case would be done in association with and for the benefit of the Eastside Crips. The jury's findings on the gang allegations are not at issue in this appeal, so we will not discuss the gang evidence in more detail.
>
> In his closing argument, the prosecutor said Collins gave the gun to Asberry, who gave it to Gary; then Gary shot the victims. The prosecutor urged the jury to find Asberry and Collins guilty of murder and attempted murder as aiders and abettors of Gary, and to find the crimes gang-related because Asberry and Collins were Crips, and Gary, a minor, was acting to prove himself worthy of membership in the Crips by shooting associates of Body, a member of the rival Bloods.

*People v. Asberry*, No. F067710, 2015 WL 5123079 *1-3 (Cal. Ct. App. Sept. 1, 2015).

## II. Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). To decide a Section 2254 petition, a federal court examines the decision of the last state court to have issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United

States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). On all issues decided on the merits, the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply, *see Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016), but the petitioner faces another hurdle: if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016). If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal

for failure to exhaust state-court remedies. *See Murray*, 882 F.3d at 807.

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises four habeas claims: (1) the state trial court's jury instructions failed to inform the jury that aiding and abetting second-degree murder and aiding and abetting attempted murder required the government to show petitioner's specific intent to kill; (2) the jury instructions erroneously allowed the jury to convict petitioner as an aider and abettor to both murder and attempted murder when the direct perpetrator committed murder with implied malice; (3) petitioner received ineffective assistance from his trial counsel because the attorney allowed the problematic jury instructions to be given; and (4) the cumulative effects of the allegedly erroneous jury instructions violated various constitutional rights. The Court of Appeal rejected each of these claims on the merits. The California Supreme Court summarily denied review.

**a. Specific Intent to Kill**

The jury convicted petitioner of aiding and abetting second-degree murder (Count One) and aiding and abetting attempted premediated murder (Count Two). On direct appeal, petitioner argued that the trial court erred by failing to inform the jury that each count required the government to show that petitioner had the specific intent to kill. The Court of Appeal disagreed, holding that the first count did not require the government to show petitioner's specific intent to kill and that, although the second count did require such a showing, the trial court gave correct instructions on that count. In this habeas proceeding, petitioner repeats his argument that the jury instructions failed to inform the jury that each count required petitioner's specific intent to kill.

*See* ECF No. 1 at 5, 29-34. Petitioner has not shown that he is entitled to federal habeas relief.[4]

A jury instruction can violate the due process guaranteed by the Constitution if it relieves the government of its obligation to "prove every element of the offense" in a criminal proceeding. *See Dixon v. Williams*, 750 F.3d 1027, 1032 (9th Cir. 2014). "The States possess primary authority for defining and enforcing the criminal law," *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993), and a state court's interpretation of state law, such as the mens rea requirement of a crime, binds a federal court on habeas review, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). An instruction that correctly informs the jury of the elements of a crime does not relieve the government of its obligation to prove every element of the crime. *See Spivey v. Rocha*, 194 F.3d 971, 976 (9th Cir. 1999). And "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Dixon*, 750 F.3d at 1032 (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). The challenged jury instruction must have "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Here, petitioner has not shown that the Court of Appeal's decision is contrary to clearly established federal law. As the Court of Appeal explained, aiding and abetting second-degree murder (Count One) does not require specific intent to kill. *See Asberry*, 2015 WL 5123079, at *5; *People v. Beardslee*, 53 Cal. 3d 68, 90 (1991) ("It is intent to encourage and bring about conduct that is criminal, not the specific intent that is the element of the target offense, which . . . must be found by the jury."); *People v. Johnson*, 243 Cal. App. 4th 1247, 1287 (2016) (reasoning that an aider and abettor can be liable for second-degree murder when the direct perpetrator acted with implied malice); *Spivey*, 194 F.3d at 976 (rejecting the argument that a direct perpetrator and an aider and abettor need to share specific intent). The Court of Appeal's conclusion on the requisite mens rea for Count One binds this court. *See Bradshaw*, 546 U.S. at 76. Because the

---

[4] Ordinarily, an error in a jury instruction under state law does not support a cognizable claim on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991) ("[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."). Reading the petition generously, however, we construe the petition to be raising a claim that the jury instructions violated petitioner's due process rights by relieving the government of its burden to prove every essential element of a crime.

8

underlying offense did not require the government to show petitioner's specific intent to kill, the jury instructions did not inappropriately relieve the government of the obligation to prove an element of the crime. Petitioner has not shown that the Court of Appeal's decision was unreasonable as to Count One.

Petitioner's conviction under Count Two—aiding and abetting premediated murder—required the government to prove that petitioner had the specific intent to kill, but the Court of Appeal concluded that the jury instructions correctly informed the jury of such requirement. *See Asberry*, 2015 WL 5123079, at *6 ("For attempted murder, an aider and abettor and a direct perpetrator both must intend to kill, but the instructions given were adequate on this point. They stated that a direct perpetrator of attempted murder must intend to kill, and that an aider and abettor must know of the direct perpetrator's intent and must intend to aid him in committing the crime."). The record supports the Court of Appeal's conclusion: the trial court instructed the jury that, to find petitioner guilty of Count Two, the government needed to show petitioner's specific intent to kill. CT 2:400-01. Petitioner does not explain his view that the Court of Appeal's decision on Count Two was unreasonable, so we give his challenge on this ground no further consideration. *See Williams v. Rodriguez*, No. 14-cv-2073, 2017 WL 511858, at *9 (E.D. Cal. Feb. 8, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived.") (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010)); *Lexington Ins. Co. v. Silva Trucking, Inc.*, No. 14-cv-p15, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014) (collecting cases).

Petitioner also argues that the trial court should have accepted the jury instructions proposed by his trial counsel. The proposed instructions stated:

> An aider and abettor must share the requisite specific intent of the perpetrator.
>
> The intent required to aid and abet the crimes alleged in Count 1 and Count 2, 1st degree murder and attempted murder, respectively, is the same intent required of the perpetrator, i.e., willfully, deliberately, and with premeditation.
>
> The aider and abettor must have shared the perpetrator's specific intent to kill.

9

> The specific intent to kill is a necessary element of both Counts 1 and 2. The specific intent required is included in the definition of 1st degree murder (CALCRIM 521) and attempted murder (CALCRIM 600, 601).

CT 2:325. As the Court of Appeal explained:

> Asberry concedes the instruction was "admittedly far from perfect . . . [and] not correct . . . ." Since the jury did not find first degree murder, any error in refusing this instruction was harmless with respect to count 1. On count 2, the requested instruction was erroneous, since attempted murder does not require a finding that the perpetrator acted willfully, deliberately, and with premeditation. The instructions given correctly stated that an attempted murderer must intend to kill.
>
> Thus, there was no error in refusing the instruction Asberry requested.

*Asberry*, 2015 WL 5123079, at *5. Again, we do not decide issues of state law in a habeas proceeding. And even if we were to do so, we would find no error. Petitioner has not shown that the Court of Appeal's decision is unreasonable under Section 2254(d).

### b. Implied Malice

Petitioner contends that the trial court erred by instructing the jury in a manner that permitted the jury to convict petitioner as an aider and abettor of second-degree murder when the direct perpetrator committed murder with implied malice. ECF No. 1 at 7. The Court of Appeal rejected this claim on the merits, explaining that the jury could convict petitioner of aiding and abetting second-degree murder even when the direct perpetrator committed murder with implied malice. *Asberry*, 2015 WL 5123079, at *5. The Court of Appeal did not unreasonably reject petitioner's claim.

The Court of Appeal held that California law does not require specific intent for aiding and abetting second-degree murder, even when the direct perpetrator killed with implied malice:

> The law is settled, of course, that a direct perpetrator can be guilty of murder based on implied malice. It is also settled that an aider and abettor is guilty as a principal if he or she knew the direct perpetrator intended to commit the crime; the aider and abettor intended to aid in its commission; and the aider and abettor did aid in its commission. Asberry has cited no case holding that these principles do not apply to implied malice murder.
>
> As Asberry points out, there is no such thing as attempted murder

> based on implied malice. An intent to kill is required for that offense. There is no authority for the idea that aiding and abetting murder is the same as attempting murder in this respect, however.
>
> There also is no basis in logic for this idea, contrary to Asberry's contentions. There is no such thing as implied malice attempted murder because it does not make sense to speak of having conscious disregard for an outcome (death) when, at the same time, one is attempting to achieve it. By contrast, it does make sense to speak of intentionally aiding a perpetrator in doing an act when both the perpetrator and the aider know the act *naturally and probably will cause death and both consciously disregard this probable result*. When Asberry passed the gun to Gary, he could have done so while doing all the following: knowing Gary intended to fire at the victim, intending to assist in that act, knowing the act would naturally and probably kill the victim, knowing Gary would fire with conscious disregard for the victim's life, and sharing in that conscious disregard. There is no logistical problem here.

*Asberry*, 2015 WL 5123079, at *5-6 (emphasis added). We see no error in this statement of California law. *See Johnson*, 243 Cal. App. 4th at 1283 (reasoning that under the natural and probable consequences doctrine, an aider and abettor can be liable for second-degree murder when the direct perpetrator acted with implied malice). For the conviction of aiding and abetting second-degree murder, "[t]he actual perpetrator must have whatever mental state is required for each crime charged," but a criminal defendant "whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator." *Id.* "[F]or example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault." *People v. Smith*, 60 Cal. 4th 603, 611 (2014) (affirming second-degree murder under natural and probable consequences doctrine); *accord Spivey*, 194 F.3d at 976 (rejecting argument that direct perpetrator and aider and abettor need to share specific intent).

Here, petitioner's second habeas claim arises from a mistaken view of California law. The Court of Appeal's decision that California law permitted his conviction as an aider and abettor when the direct perpetrator acted with implied malice was a decision on an issue of state law, and this federal court cannot reach a different conclusion on habeas review. *See Bradshaw*, 546 U.S. at 76. The trial court had no obligation under California law to instruct the jury that

11

petitioner could not be convicted as an aider and abettor when the direct perpetrator acted with implied malice, and petitioner has not shown that the jury instructions unconstitutionally relieved the government of proving an essential element of the underlying crime. Petitioner has shown no violation of due process or of any other constitutional right.

Petitioner contends that the government could not convict him when the direct perpetrator committed murder with implied malice because the government did not invoke the natural and probable consequences doctrine. *See* ECF No. 1 at 7; ECF No. 27 at 9-10. We reject this argument for two reasons:

First, petitioner has not shown a violation of federal law. *See Garcia v. Biter*, No. 14-cv-9016, 2016 WL 8814354, at *20 (C.D. Cal. Nov. 30, 2016), *recommendation adopted*, 2017 WL 1536384 (C.D. Cal. Apr. 24, 2017) (rejecting habeas claim that the government failed to give requisite notice of natural and probable consequences theory and noting that the court "is bound by the California Court of Appeal's determination"); *Hunter v. Felker*, No. 07-cv-3292, 2009 WL 1246691, at *5-6 (N.D. Cal. May 5, 2009) (same). Petitioner does not identify any holding of the United State Supreme Court supporting his claim. *See Atwood v. Ryan*, 870 F.3d 1033, 1046 (9th Cir. 2017) (reasoning that only a holding from the United States Supreme Court can establish a clearly established federal law).[5]

Second, we do not see that petitioner suffered any form of prejudice. Petitioner does not dispute that he handed a pistol to the direct perpetrator, knowing that the gun would be used to shoot the victim. A reasonable jurist could find that, because petitioner provided a deadly weapon to the perpetrator, the risk of the victim being killed—and the potential conviction for aiding and abetting murder under the natural and probable consequences doctrine—were evident to petitioner. Petitioner does not explain how there could have been any unfair surprise for him. Petitioner has shown no basis for federal habeas relief.

---

[5] Indeed, even if petitioner had made his argument in a federal criminal proceeding, his argument would have failed. A trial judge enjoys "wide discretion in the matter of charging the jury," *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003), and even a jury instruction introducing a new theory of guilt in response to a jury question during jury deliberation has been upheld, *see United States v. Fontenot*, 14 F.3d 1364, 1368 (9th Cir. 1994) (assessing no-notice-on-new-theory argument under Federal Rules of Criminal Procedure 30).

12

### c. Remaining Claims

Petitioner's remaining habeas claims depend on his first two habeas claims. In support of his third habeas claim, petitioner argues that he received ineffective assistance from his trial counsel because the attorney allowed the foregoing jury instructions to be given. *See* ECF No. 1 at 8. Because the jury instructions were correct under California law, and petitioner has not shown any violation of federal law, this court cannot grant habeas relief on the third claim.

In support of his fourth habeas claim, petitioner argues that the cumulative effects of the jury instructions violated his constitutional rights. *See id.* at 10. Petitioner does not develop an argument in support of this claim. Because he has identified no error under state law and no violation of federal law, this court should decline to grant habeas relief on this claim.

At the end of the day, all of petitioner's claims run up against another problem: a reasonable jurist could find enough evidence to conclude that petitioner had the specific intent to kill. When the direct perpetrator attempted to use the pistol, it jammed. RT 4:511-13. Petitioner then tried to grab the pistol, saying, "Fuck it, give it to me." RT 4:513. A reasonable jurist could find that this circumstantial evidence showed petitioner's intent to use the pistol to kill the victims. Given the evidence that petitioner intended to use a deadly weapon on the victims—coupled with the AEDPA's highly deferential standards—a reasonable jurist could conclude that none of petitioner's arguments matter because the jury had evidence of petitioner's specific intent to kill. We recommend that the court deny the petition in its entirety.

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the court should decline to issue a certificate of appealability.

## IV. Findings and Recommendations

We recommend that the court deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability.

These findings and recommendations are submitted to the U.S. District Court Judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: May 8, 2019

UNITED STATES MAGISTRATE JUDGE

No. 202